By the Court. —Speir, J.
The claim of the plaintiffs to equitable relief rests on the validity of the agreement entered into between the plaintiffs and Joseph D. Beers, relating to the manner of improving, for future use, the lots of land of which they were the adjoining owners. At the time of making the agreement, each party thereto owned the premises in fee, stated to'be owned by them respectively ; and neither party derived title by or through the other party. All the conveyances which carried the title from Beers to the defendant Lynch, were made subject to this agreement ; and by each of the deeds it was expressly declared that the property was thereby conveyed subject to the covenants, conditions, and restrictions contained in the agreement.
The title to "one of these lots next adjoining the Sixth avenue, and fronting on Fiftieth street, being the corner lot, passed by mesne conveyances to the defendant Lynch, and became vested in her. The plaintiffs at the time the agreement was made, were and still continue to be the owners in fee, of the several lots described therein, as belonging to and held by them.
There can be no doubt that the agreement, between Beers the grantor, and the plaintiffs, was upon a suf *377 ficient legal consideration and was valid in law. The intention of the parties in executing it is manifest. It was to prevent such a use of the premises by the owners, and those claiming under them, as might diminish their value or impair their eligibility as sites for private dwellings. Can there be any question that the courts would have enforced this agreement against Beers, had he committed a breach of his covenants by wholly disregarding its conditions and restrictions ? He could not successfully set up that the obligation of the parties, in respect to mutuality, was not exactly equal, and that therefore he was not bound.
The agreement provides that its stipulation “shall not only be binding upon the parties hereto, their heirs and successors, but that the same shall run with the land, and be binding upon all persons who may hereafter become, interested in the lands herein described, or any part or parts thereof, as owners, tenants, occupants, or otherwise, claiming under or through the said party of the second part.”
The defendant Lynch took her title expressly subject to the “ conditions and restrictions” in this agreement of Beers and the plaintiffs. It is quite likely had the contract been improperly obtained, the adequacy of the consideration would become important if either party had asked to have it rescinded. The parties who executed the indenture are bound by it, and I see no reason why such an agreement could not be binding in equity on the parties coming in as devisees or assignees with notice. It is mutual, for each proprietor was manifestly interested in securing the permanent value of his property, and in preserving the general respectability of the street, and the uniformity of the plan. The court can not enter into the question whether the consideration was equal in value to the restraint agreed upon by the parties. There are too many circumstances entering into such a calculation *378 which can not lie accurately ascertained, and which the parties are presumed to have fixed and settled (Hitchcock v. Cooke, 6 Ad. & El. 438).
The question, to what extent and in what cases are such stipulations binding on those who take the estate directly or by derivative title, is discussed in Whitney v. Union Railway Company (11 Gray, 359). The learned judge says. “ the better opinion seems to be that such agreements are valid, and capable of being enforced in equity, against all those who take the estate with notice of them, though they may not be, strictly speaking, real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by deed.” It is not material that such stipulations should be binding at law, or that any privity of estate should exist between the parties, in order to render them obligating, and to warrant equitable relief in case of their infraction (Western v. McDermot, 1 Vol. Law. Rep. Eq. cases 499; Whitman v. Gibson, 9 Sim. 196; Parker v. Nightengale, 6 Allen 341).
Where the purchaser of the fee simple entered into restrictive covenants as to the user of lands, and after-wards granted a lease which did not contain any similar prohibitions, the lessee, though he had no actual notice of the covenants, was restrained, at the suit of the original vendor, from committing a breach (Fielder v. Slater, L. R. 7 Eq. 523).
The point is (the covenant before us being clearly of the nature that it might run with the land), whether the fact that it was made by Beers with, a third person, the plaintiffs, prevents its attaching upon his own land against his grantees. The common law permits, the transfer of covenants not by direct operation of an assignment, provided they are in their nature capable of running with the land. “ The capacity of running with the land only exists when the covenant is about *379 or affecting the land, although not directly to be performed upon it, if it tends to increase or diminish its value in the hands of the owner” (1 Smith’s leading cases, 225).
The courts in these cases clearly recognize the distinction between actions at law and in equity. In Hurd v. Curtis (19 Pickering) the covenant seems to have been treated as a purely personal one; and though it holds that an action at law will not lie as between subsequent owners of the land, the same court in Massachusetts has enforced similar covenants in equity (11 Gray, 359 and 6 Allen, 341, supra). In the late case of Cole v. Hughes (54 N. Y. 444) the action was to recover the value of a party wall built by one Dean, one half upon his lot and the other on that of one Voorhis. The latter had agreed that when he used the wall he would pay one half its costs ; his successor used the wall, and the question was, whether he was liable, and it was held that he was not; that the covenant was a personal one, and did not run with the laud. The learned judge says even if the defendant had purchased with constructive notice of the covenant, he did not become liable in an action at law upon the covenant. He cites the case of Keppell v. Bailey (2 Myh. & K. 517). Lord Collenham observes in Tulk v. Moxhay (2 Phil. Rep. 774, 11 Beav. 571): “If Keppell 0. Bailey meant to lay down that the court would not enforce an equity attached to land by the owner, unless under such circumstances as would maintain an action at law, he (the chancellor) could only say he could not coincide with it.” And in Dart on Vendors and Purchasers, 705, it is said, “ nor will equity refuse to interfere, even though the covenant may be invalid at law as creating a perpetuity, or as being in unreasonable restraint of trade.”
It would seem, therefore, upon authority, that in equity the question whether covenants run with land, *380 or whether there be privity of estate, is of no importance. Nor can I see any reason why there should be. The doctrine rests upon the principle, that as in equity that which is agreed to be done shall be considered as-performed, a purchaser of land, with notice of a right of interest in it subsisting in another, is liable, to the same extent and in the same manner, as the person from whom he made the purchase, and is bound to do-that which his vendor had agreed to perform.
The important question is, therefore, did the defendant Lynch buy her lot subject to the covenants and restrictions in the agreement, in such a sense that. her performance of them constituted an element of the consideration between her and her vendor. In the case of De Mattos v. Gibson (4 De G. & J. 276), the principle is clearly stated: “ Reason and justice seem to prescribe that, at least as a general rule, where a man by gift or purchase acquires property from another, with knowledge of a previous contract, lawfully, and for valuable consideration made by him with a third person, to use and employ the property for a particular purpose, in a special manner, the acquirer shall not, to the material damage of the third person, in opposition to the contract, and inconsistently with it, use and employ the property in a manner not allowable to the giver or seller (Tulk v. Moxhay, Wilson v. Hunt, supra).
Whether the mode of use is impressed upon the property by the plan of one owner, from whom all later grantees derive title, or by mutual covenants of two or more adjacent owners, the equitable obligation to perform the covenants must be the same in principle. The plaintiffs and Beers being adjoining owners of the several lots, entered into a mutual agreement, among other restrictions, to build dwelling-houses fronting on a certain street creating an easement, or open court yard by setting their houses back from the street line, being for their mutual benefit to secure them permanent *381 value, their subsequent purchasers should be bound in equity to maintain the plan, whether at law one could be sued by another for damages or not.
There are covenants sometimes entered into by owners of land with the purchasers of other adjoining land, that the former shall not be built upon or planted, so as to impose other restrictions upon the mode of enjoyment of land in favor of persons taking no property in such land. Such a contract binds the land in view of a court of equity, where the court can properly interfere, as in case a person buys with notice of the covenant, although it may not run with the land, a specific performance of it will be enforced ; or, what amounts to the same thing, the owner of the land will be enjoined from committing a breach of the covenant,; and it is not open to the objection of creating a perpetuity (Waterman v. Gibson, 9 Sim. 196; Man v. Stephens, 15 Sim. 377; Sugden on Vendors, 266, ed. 1873).
The more important question, and one on which the plaintiffs’ right to the relief asked for depends, 3’elates to the extent of the covenant against carrying on any trade or business whatever, and whether the defendants are guilty of such a breach as would entitle the plaintiffs to damages.
By the record it appears that the tenant Yates lived in the basement of the dwelling-house with his family, having in one room thereof a real-estate office, and using it for that business, with a business sign ; and that the other tenants occupied a room in said office' for receiving orders for painting to be done by them, also with a business sign ; and that no other trade or business was carried on in the building. That the entrance to this office was on Sixth avenue. Fifteen years ago, when the parties entered into the arrangement for providing for the future use and enjoyment of their several parcels of land, the improvements of the city by the erection of buildings had not extended as *382 far in a northerly direction as Fiftieth street. This property and the surrounding neighborhood were known as, and called vacant lots. As the improvements in the city advanced on the cross-streets, they consisted chiefly, if not almost entirely, of dwelling-houses, and were held to be more valuable than buildings adapted to business purposes. The different trades and business of all kinds were confined to the more settled and populous parts of the city. The result was that real estate in the upper part of the city, improved by buildings adapted to business purposes, was less valuable than when improved by the erection of dwelling houses.
The rapid growth of the city, the improvement of its wide avenues by the comparatively easy mode of travel by the city railway, has wrought a great change not only in business locations, but in values. The Sixth avenue, among other great thoroughfares, has rapidly extended its trade and business quite beyond Fiftieth street, and is now well known as a business street. Not one of the plaintiffs’ lots lie upon this avenue. The defendant Lynch has built her dwelling-house in full compliance with the restrictions imposed,by fronting on the cross-street, with the open court, thereby admitting more light and air, and adding to the attractive character of the street. It seems to me the aim and intent of the parties was to preserve these two cross-streets exclusively for residences. The whole force of the agreement is significant of that purpose. These streets were to be built upon with dwellings, at least three stories high, the material to be of brick, brown stone, or marble. After the house is finished and occupied, the complaint is made that it has been done with the intent to use apartments on the ground floor as shops or offices for business purposes. It must be assumed, in other respects at least, the covenants have betn kept.
*383 If the building had not been put up as required, it was the duty of the plaintiff to interfere at the time, and not wait until the defendant had expended her money. Lord Eldon says: “Every relaxation which the plaintiffs have permitted, in allowing the house to be built in violation of the covenant, amounts, pro tanto, to a dispensation of the obligation intended to-be contracted by it” (Roper v. Williams, 1 Turner & Russel R. 22).
Even if it be maintained that the covenants apply to an exclusion of business on the avenue, or in any way regulate the style of the building on the avenue, otherwise than it should be a dwelling-house and fronting on the street, it is not plain that they have been broken. Offices occupied in the same way, in the basements of the street dwellings, as these are on the avenue, could not, I think, be said to be injurious or offensive to the neighborhood. They certainly are not, on a business street.
Whether this particular covenant be too broad to be upheld in a court of equity, it is enough to say that, such as it is, the breach is not sufficient, as appears from the case, to entitle the plaintiff to recover in an action at law, if one could be maintained.
It seems impossible to disregard the very different state of affairs which has taken place in the business relations in certain portions of the city of New York during fifteen years. Contracts which may obstruct its progress in trade, commerce, and population, should be strictly interpreted. It is the duty of the court to take notice of these changes. I am of the opinion that the plaintiffs should not prevail, for two reasons: First. Equity will not interfere if the plaintiffs have suffered no damage ; and, secondly, it will not interpose when change of circumstances would render it inequitable to do so.
*384 The judgment must be affirmed, with costs.
Sedgwick, J., concurred.